```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
                                   |
ORIX FINANCIAL SERVICES, INC.,     |
formerly known as ORIX CREDIT      |
ALLIANCE, INC.,                    |
                                   |
          Plaintiff,               |
                                   |    05 Civ. 9346 (KMW)
     -against-                     |
                                   |    OPINION AND ORDER
PRECISION CHARTERS, INC. and       |
JAMES W. SIGMON,                   |
                                   |
          Defendants.              |
                                   |
-----------------------------------X
```

KIMBA M. WOOD, U.S.D.J.:

Plaintiff Orix Financial Services, Inc. ("Orix") brought this action against Defendants Precision Charters, Inc. ("Precision") and James W. Sigmon ("Sigmon"), demanding payment on two promissory notes. Orix now moves for summary judgment against Defendants. For the reasons stated below, the motion is granted.

**BACKGROUND**

**I.   Precision's Debts to Orix**

In May 1997, Orix and Precision entered into a financing arrangement for three buses. Precision signed a promissory note, pursuant to which it agreed to pay Orix $186,905.00 in monthly installments. (Compl., Ex. A.) The parties also signed a schedule of equipment that included the three buses. (See id.,

1

Ex. B.)

The parties entered into another financing agreement in February 1998 for the purchase of a fourth bus. By means of a promissory note, Precision agreed to pay installments totaling $172,200.00. (Id., Ex. F.) The schedule of equipment was revised to include the fourth bus. (Id., Ex. G.)

## II. Sigmon's Guaranty of Precision's Debts to Orix

In 1994, Sigmon signed a personal guaranty agreement (the "Guaranty"), by which he agreed to be responsible for all past, present, and future debts of Precision to Orix.[1] (Compl., Ex. D.) The Guaranty stated that it would continue in force until Sigmon gave Orix written notice of termination, and that it applied to debts either "now or hereafter existing." (Id.) Although Sigmon alleges that he did not believe that the Guaranty applied to the 1997 and 1998 financing agreements, he did not terminate the Guaranty. (See Defs.' Rule 56.1 Statement ¶ 40; Pl.'s Rule 56.1 Reply ¶ 41.)

## III. Precision's Default

Precision failed to make the payments required on the 1997 note in October 2000 and thereafter, and on the 1998 note in

---

[1] The Guaranty was signed in conjunction with Precision's execution of a mortgage to Orix (see Compl., Ex. B), which has since been paid in full (see Pl.'s Mem. of Law 1).

November 2000 and thereafter.  (Pl.'s Rule 56.1 Statement ¶¶ 8, 23.)  Orix repossessed the equipment and sold it on April 3, 2001.  (Id. ¶¶ 14, 29.)

**LEGAL STANDARD**

The Court should award summary judgment to Orix only if there is no genuine issue as to any material fact and Orix is entitled to judgment as a matter of law.  Town of Southold v. Town of E. Hampton, 477 F.3d 38, 46 (2d Cir. 2007).  A genuine issue of material fact exists if there is enough evidence favoring Defendants for a jury to return a verdict in their favor.  Id.  The Court must view all evidence in the light most favorable to Defendants, drawing all reasonable inferences and resolving all ambiguities in their favor.  Id.

**DISCUSSION**

**I.   Precision and Sigmon's Liability to Orix**

Precision is liable to Orix for the unpaid portions of the 1997 and 1998 promissory notes.  Defendants do not dispute this liability.

Sigmon is also liable to Orix for Precision's debts under the 1997 and 1998 promissory notes, because the Guaranty

unambiguously provides for his continuing obligation to Orix.[2]
The Guaranty states, in relevant part:

> [W]e, the undersigned . . . agree to be . . . directly
> and unconditionally liable to [Orix] for the due
> performance of all such Security Obligations past,
> present and future, and any and all subsequent
> renewals, continuations, modifications, supplements and
> amendments thereof, and for the payment of any and all
> debts of [Precision] of whatever nature, . . . whether
> now or hereafter existing . . . .  This instrument is a
> continuing guaranty and shall continue in full force
> and effect . . . until the full performance, payment
> and discharge of all Security Obligations, and
> thereafter until actual receipt by [Orix] from us of
> written notice of termination; such termination shall
> be applicable only to transactions having their
> inception thereafter.

(Compl., Ex. D.)  The New York Court of Appeals has held that a continuing guaranty with language of this nature "is not limited to the life of loans executed contemporaneously therewith, and generally cannot expire by mere conduct, change of circumstances, or lapse of time."  Chem. Bank v. Sepler, 457 N.E.2d 714, 716 (N.Y. 1983) (citations and footnote omitted); accord Nat'l Fin. Co. v. Perez, 663 N.Y.S.2d 852, 853 (App. Div. 1997); USI Capital & Leasing v. Chertock, 568 N.Y.S.2d 74, 75 (App. Div. 1991).

Defendants correctly note that the terms of a guaranty must be strictly construed both in favor of the guarantor and against

---

[2] The interpretation of a guaranty agreement, as with all contracts, is a question of law for the Court.  See Saratoga Spa & Bath, Inc. v. Beeche Sys. Corp., 656 N.Y.S.2d 787, 791 (App. Div. 1997).  Because the guaranty is unambiguous, the Court must enforce it as written, without resort to extrinsic evidence.  See James Talcott, Inc. v. Bloom, 288 N.Y.S.2d 398, 400 (App. Div. 1968).

the drafter, Orix.  Levine v. Segal, 682 N.Y.S.2d 375, 375 (App. Div. 1998); Del. Funds, Inc. v. Zuckerman-Honickman, Inc., 351 N.Y.S.2d 769, 770 (App. Div. 1974) (noting doctrine of strictissimi juris).  But the Guaranty here is unambiguous: Sigmon agreed to be liable for Precision's debts to Orix, even debts on future agreements, until he terminated the Guaranty in writing.[3]  The future agreements between Orix and Precision were expressly contemplated in the Guaranty, and are not a modification of the Guaranty.  It is immaterial that Orix did not expressly reiterate Sigmon's agreement to be guarantor of subsequent agreements.  Cf. Mfrs. Hanover Trust Co. v. Restivo, 564 N.Y.S.2d 141, 141 (App. Div. 1991) (holding that unambiguous language of continuing guaranty agreement barred allegation that guarantee fraudulently represented temporary and conditional nature of agreement).

   Because both Precision and Sigmon are liable for the unpaid portions of the 1997 and 1998 promissory notes, Orix is entitled to summary judgment against both Defendants.

---

   [3] Defendants argue that the Guaranty applied only to future "Security Obligations," a defined term.  "Security Obligations" are defined in the Guaranty as "one or more equipment lease agreements and/or one or more security agreements, including but not limited to conditional sale agreements, leases, chattel and/or real estate mortgages, notes or other deferred or time payment paper, and/or any and all agreements relating to the purchase of such paper or documents or both."  (Compl., Ex. D.)  Assuming arguendo that Defendants' interpretation of the Guaranty is correct, the 1997 and 1998 financing agreements are both of a type encompassed by this definition.

**II.   Amount of Damages**

The values of the 1997 and 1998 promissory notes, which Precision signed and Sigmon guaranteed, were $186,905.00 and $172,200.00, respectively. (Compl., Exs. A, F.)  Orix has presented evidence that, as of the sale date of April 3, 2001, it was owed $84,677.67 on the 1997 note and $104,707.54 on the 1998 note. (Kalpakoff Aff., Exs. I, K, P, Q.)  Pursuant to the parties' agreements, Orix is also owed interest on those sums at a rate of 1/15th of 1% per day. (Compl., Exs. A, F; see also id., Ex. D.)

Defendants do not dispute the calculations of these figures. They argue that because the face value of the 1998 note is higher than the price of the bus purchased in 1998, Orix is, in effect, "double-dipping," or seeking payment on the 1997 note even though the 1998 note was allegedly meant to recollateralize the equipment purchased in 1997. (Defs.' Mem. of Law at 6-7.) However, Defendants have not offered any evidence in support of their view or cited any relevant case law.  By contrast, Orix has offered evidence that, until the time of default, Defendants made regular payments on both the 1997 and 1998 notes. (See Kalpakoff Aff., Exs. I, P.)  Defendants' position is therefore speculation, which cannot defeat a motion for summary judgment.  Orix is entitled to summary judgment with respect to the damages owed by Defendants.

### III. Attorneys' Fees

The Guaranty and the 1997 and 1998 promissory notes all specify that Defendants shall pay Orix attorneys' fees equal to 20% of the unpaid amount. (Compl., Exs. A, D, F.) The documents all stipulate that 20% is a "reasonable" sum. (Id.) Orix's attorney has submitted an affidavit stating that (1) 20% of the unpaid amount in this case is $37,877.00, and (2) he has engaged in 37.7 hours of work on the case to date. (Stein Aff. ¶¶ 3-4.) If Orix's attorney were awarded $37,877.00, he would be receiving an hourly rate of $1,004.69.

Although the parties' agreements entitle Orix to an award of attorneys' fees, the proposed sum is unreasonable. See, e.g., Marine Midland Bank, N.A. v. Scallen, 554 N.Y.S.2d 541, 543 (App. Div. 1990) (holding attorneys' fees equal to 15% of $202,666.70 unreasonable in action to recover on promissory note). Under New York law, the Court has inherent authority to determine reasonable attorneys' fees. Orix Credit Alliance, Inc. v. Grace Indus., Inc., 690 N.Y.S.2d 651, 653 (App. Div. 1999). The parties shall negotiate further in an effort to settle on a reasonable award.

### CONCLUSION

For the reasons stated above, the motion for summary

judgment (docket number 20) is GRANTED.  Defendants are liable to Plaintiff in the amount of $189,385.21, plus interest of 1/15th of 1% per day accruing from April 3, 2001, plus reasonable attorneys' fees.

By August 10, 2007, counsel are directed to confer with each other on the issue of reasonable attorneys' fees.  If the parties are unable to reach agreement by that date, they shall jointly submit a letter to the Court stating their respective positions, and citing applicable law.

SO ORDERED.

Dated: New York, New York
July 13, 2007

_____
Kimba M. Wood
United States District Judge